## Bernhardt Hund v. William Gardner.

1. VERDICTS—*Upon Conflicting Evidence Conclusive on Questions of Fact.*—Where the evidence in a case is conflicting on the principal issues, the verdict of the jury is conclusive upon the questions of fact submitted.

Assumpsit, for work, labor and services. Appeal from the Circuit Court of St. Clair County; the Hon. MARTIN W. SCHAEFER, Judge, presiding. Heard in this court at the February term, 1901. Affirmed. Opinion filed September 4, 1901.

WINKELMANN & BAER, attorneys for appellant; A. A. HUNT, of counsel.

F. H. KRUGER, attorney for appellee.

MR. JUSTICE BIGELOW delivered the opinion of the court.

Appellee commenced his action before a justice of the peace of St. Clair county, and recovered a judgment against appellant for the sum of $116.35. An appeal was taken by appellant to the Circuit Court, where a verdict for the sum of $141 was returned against appellant. A new trial was awarded and the cause being again tried, a verdict for the sum of $116.35 was returned in favor of appellee. Judgment was rendered on the verdict and appellant has appealed to this court.

The evidence of appellee tends to show that he commenced to work for appellant on the 12th of June, 1894, and continued to work for him until some time in February, 1897, at the rate of $25 per month for a part of the time, and $35 for a part of the time.

This action is brought to recover the balance which appellee claims appellant owes him. That appellee performed

the work for which the action is brought is admitted; and it seems also to be admitted, if appellant is liable at all, that the amount of the claim is correct. At least the point litigated is, whether appellant or his deceased son, B. M. Hund, owed this balance. On this question there was introduced considerable evidence.

In 1894 appellant was doing a business in ice, grain and teaming; he had been in the ice business since 1870. Appellant testified that on the first day of May, 1895, he sold the ice business to his son, B. M. Hund, who carried on that business until his death, in January, 1897; that prior to the sale of the business to his son, appellee had been driving the ice wagon for appellant, but that after the ice business had been transferred to B. M. Hund, appellant, his son, and appellee came together, and at that time Bernhardt Hund notified appellee that the ice business had been transferred to B. M. Hund, and that thereafter appellee should look to him for his pay. Appellant also testified that after his son's death, he hired appellee, at the rate of $25 per month, to drive the wagon in connection with the ice business, which he says had been taken back by him, and in that connection he also says, that he paid the estate. nothing for the business when he took it back. The evidence also tends to show that after May 1, 1895, statements for ice sold were made out with B. M. Hund as the owner of the ice business, and that appellee collected such bills from customers. On the part of appellee the evidence tends to show that sometimes appellant and sometimes his son paid the hired help, who did work about the ice business; that appellant, after May 1, 1895, made contracts with the St. Louis Ice and Cold Storage Company for the purchase of ice, and made payments therefor in the business that either he or his son was at that time conducting. Appellee denies that appellant notified him that the ice business had been sold to his son, or that thereafter appellee must look to B. M. Hund for his wages. These are the facts that bear directly on the main issue; there are other facts, which are in the nature of impeaching evidence, and by appellant thought

to bear heavily against the justice of appellee's claims. After B. M. Hund's death appellee presented a claim against his estate for $91 for the same services which are in controversy in this case, and when the estate proved to be insolvent, appellee brought this suit against appellant. To this fact appellee replies, that he tried to have a settlement with appellant after B. M. Hund's death, and that appellant told him to put in his claim for wages after May 1, 1895, against the estate of B. M. Hund, which appellee did merely at appellant's suggestion. There is considerable other testimony on collateral issues, bearing more or less on the principal issue, whether appellant owed appellee the balance of wages for which this action is brought, and in view of counsel's insistence of the manifest wrongfulness of the verdict, we have carefully considered each point made; it would serve no useful purpose to make a detailed analysis of this impeaching testimony, much of which is irreconcilable, and will remain so after repeated trials.

There is evidence to support the judgment, and the trial court's approval of the third verdict rendered in this case, justifies us in saying, that it must be an extraordinary case indeed which would justify us, as a court of review, in setting aside the verdict as contrary to the evidence.

In many respects appellee seems to be impeached by his own testimony; yet this impeachment is not of that decisive character which should cause us to disregard the verdict of the jury and the trial judge's approval of it, if the law laid down to the jury was correctly stated. Parmly v. Farrar, 67 Ill. App. 624.

It is not contended and can not be, that there is no evidence to support the finding of the jury. At the instance of appellee, the following instructions, among others, were given by the court :

" 4. The court instructs the jury that the weight to be given to the testimony of the witnesses in this case, is a question exclusively for you; and the law is, that where two witnesses testify directly opposite to each other on a material point, and are the only ones that testify directly to the same point, you are not bound to consider the evi-

dence evenly balanced, or the point not proved; it is your duty to regard all the surrounding facts and circumstances proved on the trial, and give credit to one witness over the other, if you think such facts and circumstances warrant it."

" 5. The jury are instructed that, in determining the weight to be given to the testimony of the different witnesses in this case, you are authorized to consider the relationship of the different witnesses to the defendant, B. Hund, if the same is proved; their interest, if any in the event of this suit; their feelings or prejudice, if any has been shown; their actions while upon the stand, and their means of knowing of the things of which they speak; and it is your duty to give only such credit to the testimony of such witnesses, as under all of the circumstances such witnesses seem to be entitled to."

The complaint of the first above quoted instruction is, that it assumes that there was a conflict of evidence on some material point. That there may be such an implied assumption contained in the instruction is true, but as applied to the evidence, we are unable to see wherein there is reversible error on that account, for it is admitted by both appellant and appellee that there was a direct conflict on the question whether appellee had been notified by appellant—they being the only surviving witnesses to this transaction—to look to B. M. Hund for the payment of his wages after May 1, 1895. That the absence or presence of such a notice is evidence to a material point can not well be questioned, so that both the assumed conflict of the evidence and its assumed materiality was really a conceded fact.

In regard to the second above quoted instruction, it would seem, on first impression, to be faulty in calling attention specially to the supposed infirmities of the appellant's witnesses. The record discloses the fact that a son and a son-in-law of appellant testified as witnesses on his behalf, while no person who was in any way related to appellee was a witness in his behalf. We do not say that we are entirely satisfied with an instruction framed on this plan, yet had the instruction called attention to the fact of relationship in general

terms, the jury would just as readily have applied its meaning to appellant's witnesses.   We think it would have been preferable to have framed the instruction in such a way as not to have called special attention to the witnesses by reason of their relationship to the defendant, though such relationship is even proven.   Ammerman v. Teeter, 49 Ill. 400.

The bias, feeling or interest of a witness in the event of a suit is a matter for the consideration of the jury, whether it comes from relationship or not, and in this respect the instruction is faulty, but in the face of three verdicts we do not feel warranted in reversing for error, in a mere cautionary instruction not directly controlling the issue litigated.

The issue in this case was a very narrow one; after carefully weighing all of the testimony presented, we are unable to say that there is no evidence tending to prove appellee's cause of action, or that the trial judge's final approval of the verdict is of no significance.

The judgment of the lower court is accordingly affirmed.